# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>KEORIE SMITH,<br><br>　　　　　　　　　Defendant. | Case No. 23-CR-77-25-JPS<br><br>**ORDER** |

1. **INTRODUCTION**

    Defendant Keorie Smith ("Smith") is charged in this matter with two counts of being a felon in possession of a firearm, conspiracy to transfer firearms, as well as substantive mail fraud and mail fraud conspiracy. ECF No. 1 at 2–8, 12–13, 20, 27. Smith filed a motion to suppress evidence of the firearm that is the basis of Count Forty-Three, including a request for an evidentiary hearing. ECF No. 515. The Government opposes the request for an evidentiary hearing, ECF No. 536, and the motion to suppress on its merits. ECF No. 544. Smith filed a reply with respect to the request for an evidentiary hearing. ECF No. 537. For the reasons stated herein, an evidentiary hearing is unnecessary, and Smith's motion to suppress evidence of the firearm that serves as the basis of Count Forty-Three must be denied.

2. **RELEVANT FACTS**

    On April 21, 2023, Oak Creek Investigator and FBI Task Force Officer Brian Zangl ("Zangl"), along with other law enforcement officers, went to the Milwaukee Police Department District 7 ("District 7") located at 3626

W. Fond Du Lac Avenue, Milwaukee, Wisconsin to meet with Smith's Wisconsin Department of Corrections Probation and Parole Agent. ECF 515-1 at 6 (Zangl affidavit in support of probable cause search of vehicle). Smith's state probation agent had advised law enforcement officers that Smith had a scheduled meeting with her at 1:00 p.m. on April 21, 2023. ECF No. 536-1 at 1 (Zangl report). Smith's state probation agent advised officers that various drugs were found on Smith's recent toxicology screen, and that if Smith showed up for the scheduled meeting, he would be arrested for a probation violation. *Id.*

Upon arrival at District 7, Zangl remained in the area of W. Fond Du Lac Avenue and W. Auer Avenue, while the other investigators spoke with Smith's probation agent. *Id.* At approximately 1:05 p.m., Zangl observed Smith walking westbound from the northwest corner of W. Fond Du Lac Avenue and N. 36th Street. ECF 515-1 at 6. Zangl then observed Smith enter the main entrance doors to District 7. *Id.* Smith was arrested by his state probation agent and Milwaukee Police Department officers at approximately 1:05 p.m. *Id.*

After observing Smith enter District 7, Zangl checked the area and located a maroon Dodge Charger, bearing Tennessee license plate 89BG16, which was affixed to the rear bumper, parked in the Buffalo Boss Milwaukee parking lot, located at 3536 W. Fond Du Lac Avenue. *Id.* Zangl was aware that the maroon Dodge Charger had previously been operated by Smith, and he had personally observed Smith operating the maroon Dodge Charger on April 13, 2023 at 8605 W. Good Hope Road, Milwaukee Wisconsin. *Id.* Smith notes that the Zangl affidavit does not support a conclusion "that officers observed Smith procure or deposit any form of contraband from or into the Dodge Charger." ECF No. 515 at 3 n.1.

As reflected in the Buffalo Boss Milwaukee parking lot's surveillance video from April 21, 2023, the maroon Dodge Charger entered the parking lot and parked at approximately 1:02 p.m., and Smith exited the maroon Dodge Charger at approximately 1:03 p.m. and walked westbound out of the parking lot and camera view toward District 7. *See* ECF No. 536-2 (Zangl's review log of Buffalo Boss Milwaukee surveillance video). The surveillance video shows that the officers' vehicle entered the parking lot at approximately 1:07 p.m., circled Smith's vehicle, and then parked. ECF No. 536 at 4 & n.1.[1]

At approximately 1:11 p.m., Zangl got out of his vehicle and walked to Smith's maroon Dodge Charger and looked into the windows. ECF No. 536 at 4; ECF No. 536-1 at 1. When looking through the closed windows of the maroon Dodge Charger, Zangl observed the following in plain view: a knotted clear plastic sandwich bag containing a white colored substance in the driver's door compartment near the window switches; a black cup style ash tray in the center cup holders with burnt blunt wrappers and ash on the top; and green plant material scattered on the front passenger side floor board. ECF 515-1 at 6. Zangl also smelled the odor of burnt marijuana emitting from within the vehicle. *Id.*

---

[1]This is the Government's representation of what the surveillance video shows at this timestamp. The video itself is not in the record (although the Government has offered it to the Court for *in camera* review, ECF No. 536 at 4 n.1). Although Zangl's review log indicates that he reviewed the surveillance video from 12:45 p.m. to 1:15 p.m. on April 21, 2023, he only summarizes what happened on the video specifically from 1:02 p.m. to the time Smith left the vehicle and walked toward District 7. ECF No. 536-2.

The Government does not clarify who "the officers" were, besides Zangl, or what jurisdiction they represented.

The surveillance video concluded at 1:15 p.m. and, at that time, Zangl is still looking in the windows of the maroon Dodge Charger. ECF No. 536 at 4. The surveillance video reveals that no other person entered or exited the maroon Dodge Charger prior to law enforcement's arrival at the vehicle. *Id.*

Zangl and other officers searched Smith's vehicle shortly thereafter, having procured the keys from Smith after he was taken into custody. ECF No. 515-1 at 6–7. They recovered from under the front passenger seat a loaded Glock G27 .40 caliber handgun bearing serial number RFY004 with an extended magazine, among other items. *Id.* at 7; ECF No. 536-1 at 2. This firearm is the subject of the charge in Count Forty-Three of the Indictment. ECF No. 1 at 27. Smith notes "[t]he time interval between Smith being taken into custody and the unlocking [and search] of the vehicle is not asserted in the [Zangl] [a]ffidavit nor . . . in the additional reports supplied by the [G]overnment." ECF No. 515 at 3.

3. ANALYSIS

   3.1 Request for Evidentiary Hearing

The Court may order that an evidentiary hearing take place when there are "material disputed facts" that will drive resolution of the overarching motion to suppress. *See* Crim. L.R. 12(c). Smith "ha[s] the burden of establishing the necessity of a hearing" by showing "that there is a disputed material issue of fact." *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1995) (citing *United States v. Woods*, 995 F.2d 713, 715–16 (7th Cir. 1992) and *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992)).

Smith seeks an evidentiary hearing to elicit testimony from Zangl to create "a more precise time line [sic] of events" as to when police arrived at Smith's vehicle, looked inside, and opened it, and to establish whether any

other person "entered or exited the vehicle prior to police physically arriving at the vehicle." *Id.* at 2. He concedes that "[t]here are not so much facts in dispute as there are facts not revealed" in the Zangl affidavit, ECF No. 515-1, the Zangl report, ECF No. 536-1, and the Zangl surveillance video review log, ECF No. 536-2. *Id.* Therefore, Smith asserts that Zangl's testimony and/or "other witnesses (and exhibits)" that the Government wishes to produce are necessary "for any analysis of the constitutionality of the search." *Id.*

The Government opposes the request for an evidentiary hearing because Smith "has not properly presented a disputed issue of material fact regarding the 'timeline' of events on April 21, 2023 or explained how the 'timeline' is a material issue in this case." ECF No. 536 at 6. In reply, Smith acknowledges that "it is arguably true that the disclosed facts have not created a dispute," but he maintains that the Government should still be required to disclose its evidence establishing the timeline of the car search because its failure to do so demonstrates a "lack of candor." ECF No. 537 at 2.

As discussed below, the only facts that matter for resolution of Smith's motion to suppress are (1) when Smith was taken into custody and (2) whether his car was searched after that. These facts are not in dispute so there is no need for an evidentiary hearing. If Smith wished to seek disclosure of the full surveillance video, he had other means at his disposal to do so, such as a motion to compel under Federal Rule of Criminal Procedure 16. Accordingly, the Court denies this request.

### 3.2 Motion to Suppress Firearm

The Fourth Amendment establishes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures." U.S. Const. amend. IV. But "Fourth Amendment law has long recognized that criminal offenders on community supervision have significantly diminished expectations of privacy." *United States v. Caya*, 956 F.3d 498, 500 (7th Cir. 2020).

Wisconsin law provides that an individual on extended state supervision after serving an initial term of confinement may be subject to searches of "any property under his or her control" if "a law enforcement officer . . . reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition of release to extended supervision." Wis. Stat. § 302.113(7r). Such searches must be "conducted in a reasonable manner and may not be arbitrary, capricious, or harassing." *Id.* If the Wisconsin Department of Corrections "alleges that any condition or rule of extended supervision has been violated by the person, the department may take physical custody of the person for the investigation of the alleged violation." Wis. Stat. § 302.113(8m)(a). This provision, also known as "Act 79," has been upheld against a general Fourth Amendment challenge. *Caya*, 956 F.3d at 500.

Smith argues that Zangl's and the other officers' search of his vehicle was inconsistent with the Fourth Amendment and Act 79's requirements because after he was arrested for a probation violation, the vehicle was no longer accessible to him and therefore not under his control. ECF No. 515 at 4. Consequently, he argues, the search occurred when the vehicle was outside his control, was unlawful, and the results thereof must be suppressed. *Id.* He asserts in the alternative that Act 79 is unconstitutional as applied to him because Zangl and the officers who searched his vehicle failed to assess whether the vehicle was in fact under his control, and

Page 6 of 9
Case 2:23-cr-00077-JPS    Filed 09/30/24    Page 6 of 9    Document 583

therefore the search was arbitrary and unreasonable under § 302.113(7r). *Id.* at 5.

The Government responds that there is no legal support for Smith's contention that the vehicle was not under his control within the meaning of Act 79 because it was physically inaccessible to him. ECF No. 544 at 7. It relies on the Seventh Circuit's reasoning in *United States v. Wood*, which analyzed a similar provision in Indiana law, that where a person's "[extended supervision] conditions authorized searching his property when he remained in [state] custody, it was constitutionally reasonable for officers to search his [property] *after* his arrest." *Id.* at 6 (citing 16 F.4th 529, 537 (7th Cir. 2021)). The Government further argues that the search was consistent with Act 79's requirements due either to Smith's having tested positive for controlled substances in violation of the terms of his extended supervision and/or to Zangl's observation of drugs and paraphernalia in plain view inside the vehicle and smelling the odor of burnt marijuana coming from inside the vehicle, which established reasonable suspicion. *Id.* at 7–8. The Government finally argues that, even if the search was not lawful under Act 79, "the search was otherwise lawful under the automobile exception to the warrant requirement and the doctrine of inevitable discovery." *Id.* at 8–11.

The Court agrees with the Government. Smith's arguments are foreclosed by *Woods* and *Caya*. Act 79 permits searching property under the control of an individual, like Smith, who is on extended state supervision, when there is reasonable suspicion that the individual committed a crime or violated a term of his extended supervision. The state has an "ongoing supervisory role over" people on extended supervision. *Woods*, 16 F.4th at 537. "If such supervision abruptly terminated once a parolee was arrested—

whether for a failure-to-appear violation or a serious crime—the continuity of a state's parole system would be severely impeded." *Id.* "The Fourth Amendment does not dictate this unreasonable result." *Id.* Adopting Smith's argument would mean that Smith has a lower expectation of privacy in property under his control when he is on extended supervision but a higher expectation of privacy in that property when he is arrested for violating the terms of his supervision or committing a crime. Smith's argument that the vehicle was not physically under his control is sound at the level of basic logic, but viewed against the backdrop of Fourth Amendment and Act 79 case law, leads to an absurd result. The Court cannot adopt it.

Smith's other argument, an as-applied challenge to Act 79, also fails. Smith again cites no legal authority supporting his assertion that a search is arbitrary and unreasonable within the meaning of § 302.113(7r) when the officers conducting the search do not first determine that the property subject to the search is under the control of the person on extended state supervision. Even if he had, the argument would be without merit. Zangl observed Smith operating the subject vehicle a week prior to Smith's arrest and the vehicle search and, on the day of the search, observed the same vehicle parked in an area from which he observed Smith walking. From these observations, it was appropriate for Zangl to conclude that the vehicle was under Smith's control. Smith does not argue, and the Court has not located any authority stating, that Zangl was required to make a further assessment on this front.[2]

---

[2] In his request for an evidentiary hearing, Smith impliedly argues that perhaps the Buffalo Boss surveillance video might reveal that someone else entered the car in between when he left it (and deposited contraband) and when

Because the Court concludes that the search of Smith's vehicle was lawful under Act 79, it need not engage with the Government's argument that probable cause existed to search the vehicle.

### 4. CONCLUSION

For the reasons stated above, Smith's motion to suppress the firearm that serves as the basis of Count Forty-Three in the Indictment will be denied, both on its merits and insofar as Smith has requested an evidentiary hearing.

Accordingly,

**IT IS ORDERED** that Defendant Keorie Smith's motion to suppress, ECF No. 515, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2024.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge

---

Zangl and the officers searched it and recovered the firearm. ECF No. 515 at 2. The Court accepts the Government's statement, ECF No. 536 at 4, that the surveillance video shows that nobody else entered the vehicle after Smith left it and before it was searched.